UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES COMFORT,

                              Petitioner,

     vs.                                         9:10-CV-677 (FJS/ATB)

THOMAS LAVALLEY,
Superintendent,

                              Respondent.
_____

JAMES COMFORT, Petitioner, *pro se*
LEA L. LA FERLITA, Asst. Attorney General for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

# REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

## I.    Background

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Onondaga County Court on September 23, 2003. *People v. Comfort*, 60 A.D. 3d 1298, 1299; 875 N.Y.S. 2d 672, 672 (4th Dept. 2009). Petitioner was convicted after a jury trial of Rape in the First Degree, Rape in the Third Degree, Attempted Sodomy in the First Degree, Attempted Sodomy in the Third Degree, Assault in the Second Degree, three counts of Sexual Abuse in the Third Degree, and Endangering the Welfare of a Child. *Id.* Prior to petitioner's direct appeal, the trial court denied petitioner's motion to vacate the convictions pursuant to N.Y. Criminal Procedure Law (N.Y. CPL) § 440.10, which

ruling petitioner also appealed. *Id.* The Appellate Division, Fourth Department, consolidated the appeals, and in a combined decision, modified the judgment, dismissing two counts of Sexual Abuse in the Third Degree and affirming the judgment as modified. *Id.* The Appellate Division also affirmed the trial court's disposition of the section 440.10 motion. *Id.* On July 21, 2009, the New York Court of Appeals denied petitioner leave to appeal. *People v. Comfort*, 884 N.Y.S. 2d 705, 705 (2009).

The petition in this case was filed on June 10, 2010. (Dkt. No. 1). Respondent has filed an answer and a memorandum of law. (Dkt. No. 10). The state court records were filed under seal. Petitioner filed a traverse on January 10, 2011. (Dkt. No. 16).

Petitioner raises four grounds for this court's review:

(1) Petitioner's sentence was imposed to penalize him for rejecting plea offers and choosing to go to trial.

(2) The prosecutor intentionally withheld exculpatory DNA evidence, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

(3) The trial court denied petitioner his due process right to a fair trial when it denied a request for a continuance to allow petitioner's substituted counsel additional time to prepare.

(4) Petitioner was denied effective assistance of trial counsel.

For the following reasons, this court finds that petitioner's claims have no merit and will recommend denial of the petition.

## II. Relevant Facts

In 2002, the victim in this case (CB), 16 years-old at the time, met a male on a

toll-free chat line who went by the name of "DJ." DJ told CB that he was an 18-year-old Syracuse University student. DJ eventually obtained CB's phone number and began calling her directly. On December 7, 2002, DJ called CB and asked to meet her in person. CB and her friend were picked up by DJ at CB's home. CB had never met DJ, but recognized his voice. CB and her friend got into DJ's car, with CB in the front and her friend in the back. DJ tried twice to force CB to perform oral sex on him, but she was able to resist. DJ then took CB and her friend to his apartment, where he locked CB in his bedroom and repeatedly raped her.

After the incident, DJ forced CB to write a statement saying that she had lied about her age, that there was no sexual contact, and that DJ no longer wanted to "hang out" with CB when he discovered her true age. DJ then drove CB and her friend back to CB's house. On the way in the car, DJ twice attempted to touch CB's and her friend's breasts.

The next day, CB told her mother what happened. CB's mother called a Rape Crisis Center and took CB to the emergency room. A rape kit was completed at the hospital, and the police began an investigation. Part of the evidence collected during the investigation was the clothing CB was wearing the day of the rape, including a bra and pair of underpants. The bra and underpants were later analyzed for DNA evidence. CB ultimately identified petitioner, who was actually 27 years old at the time of the rape, as the man she knew as DJ from the chat line.

### III. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides

that a federal court lacks the power to grant a writ of habeas corpus under 28 U.S.C. § 2254

> unless the adjudication . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(d)(1)) (alterations in original). Clearly established federal law "means 'the holdings as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003); *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (alterations in original).

A decision is "contrary to" clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts," or if the state court identifies the appropriate legal standard, but unreasonably applies it to the facts of the petitioner's case. *Williams*, 529 U.S. at 413. The lower court may not grant the writ if it concludes "in its independent judgment" that the state-court decision applied clearly established federal law erroneously or incorrectly; rather, the application must also be unreasonable. *Id.* at 411. In order for the application to be "unreasonable," there must be "some increment of incorrectness beyond error," but that increment may not be too great, otherwise habeas relief would be limited to those state court decisions that are

"so far off the mark as to suggest judicial incompetence." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

In order to apply this standard under the AEDPA, the petitioner's claim must have been "adjudicated on the merits" in the state court proceedings. 28 U.S.C. § 2254(d)(1). *See also Day v. Taylor*, 459 F. Supp. 2d 252, 256 (S.D.N.Y. 2006) (a federal court's ability to review a habeas petition depends on whether the state court adjudicated the petitioner's claims on the merits or on procedural grounds). Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

## IV. Alleged Vindictive Sentence

Petitioner argues that his sentence was vindictive, claiming that the state-court judge imposed a 40-year aggregate sentence after the jury found him guilty in order to punish him for choosing to go to trial instead of accepting the pretrial offer of one to three years.[1]  That claim is both unexhausted and procedurally barred.

---

[1] Petitioner is not challenging the sentence itself, and he would not be able to do so in this proceeding. When a sentence is within the range set by state law, no federal constitutional issue arises. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). New York law permits a maximum determinate sentence of 25 years for class B violent felonies, and a maximum determinate sentence of 15 years for class C violent felonies. Rape in the first degree is a class B violent felony, and

5

### A. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365, (1995) (internal quotation and other citations omitted); 28 U.S.C. § 2254(b)(1). "A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

In his direct appeal and section 440.10 motion, petitioner did not reference any federal statutory or constitutional provision in his challenge to the length of his

---

attempted sodomy in the first degree is a class C violent felony. N.Y. PENAL LAW §§ 70.02 1.(a), (b), 2.(a), 3.(a), (b), 130.35, 130.50. Whether or not sentences should run concurrently or consecutively is a matter of state law and not cognizable on federal habeas review. *See Reed v. Cuomo*, 08-CV-4875, 2010 U.S. Dist LEXIS 34030, at *4, 2010 WL 1930215 (S.D.N.Y. Apr. 21, 2009) (citations omitted).
  Petitioner's consecutive sentences of 25 years and 15 years are within the range set by New York state law, and running them consecutively is permitted under New York state law. *See* N.Y. Penal Law § 70.25.

6

sentence. As legal authority for his argument, petitioner cited *People v. Clark* and *People v. Bailey*, two cases where the defendant's sentence was modified by the Appellate Division in the interests of justice based on New York State law. *People v. Clark*, 6 A.D.3d 1066, 1066 (4th Dep't 2004); *People v. Bailey*, 8 A.D.3d 1024, 1024 (4th Dep't 2004). Neither case employs federal constitutional analysis, and thus there was no federal claim of vindictiveness adjudicated by the state court. Hence, this court finds that any federal claim relating to the alleged disparity between petitioner's sentence and the pretrial plea offer is unexhausted.

### B. Procedural Bar

If petitioner has failed to exhaust his state court remedies, but no longer has remedies available in state court, then the claims are "deemed" exhausted, but may also be barred by procedural default. *Bossett v. Walker*, 41 F.3d at 828 (citing *Grey v. Hoke*, 933 F.2d 117, 120–121 (2d Cir. 1991)). Petitioner's only argument in support of his vindictive sentence claim is the apparent disparity between the pretrial plea offer of one to three years, to run concurrently with a sentence imposed in Monroe County, and the forty-year aggregate sentence that was imposed after trial. (Pet.'s Mem. of Law at 45). Because the arguments that support petitioner's vindictive sentence claim were available at the time of his direct appeal, petitioner could not now raise that claim in another section 440 motion to vacate. *See* N.Y. C.P.L. § 440.10(2)(c). Thus, petitioner's vindictive sentence claim is procedurally barred.[2]

---

[2] Under New York law, "it is well-settled . . . that where the record is sufficient to allow appellate review of a claim, the failure to raise that claim on direct appeal precludes subsequent collateral review of that claim." *Louis v. Fischer*, 04-CV-2887, 2007 WL 4198255, at *21

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999). Petitioner has failed to demonstrate that anything impeded him from asserting a federal constitutional claim on direct appeal, and nothing in the record suggests the outcome would have been different had he asserted a federal constitutional violation on appeal. Accordingly, petitioner's vindictive sentence claim should be dismissed as procedurally barred.

## V.     **Alleged *Brady* Violation**

### A.     **Applicable Law**

A prosecutor has the duty under *Brady v. Maryland*, 373 U.S. 89 (1963) to

---

(S.D.N.Y. June 25, 2007) (citation omitted); *Brown v. Perlman*, 07 Civ. 8672, 2008 WL 2009220, at *28 n.56 (S.D.N.Y. May 8, 2008) (collecting cases). Where an ineffective assistance claim is record-based, federal habeas courts have found this procedural bar (based on C.P.L. § 440.10(2)(c)) to be "firmly established and regularly followed," and thus "adequate." *See, e.g., Alston v. Donnelly*, 461 F. Supp. 2d 112, 123–24 (W.D.N.Y. 2006)*; Sweet v. Benne*tt, 353 F.3d 135, 139–40 (2d Cir. 2003). The application of section 440.10(2)(c) in the circumstances of this case would also satisfy the three *Cotto* factors and, would therefore, not be "exorbitant." *See, e.g., Estwick v. Walker*, 01 Civ. 2174, 2004 WL 1151581, at *5–7 (S.D.N.Y. May 24, 2004).

produce evidence favorable to the defense. To prevail on a *Brady* claim, petitioner must show that the prosecution suppressed evidence favorable to him and that the evidence was material either to guilt or punishment. *Brady*, 373 U.S. at 87. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the case. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

If defense counsel knew or should have known of essential facts permitting him to take advantage of exculpatory evidence, then the evidence is not considered withheld for *Brady* purposes. *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir. 1995). Disclosure of impeachment evidence is also required under *Brady*. *United States v. Bagley*, 473 U.S. at 676. Evidence relevant to impeachment is material if the "witness whose testimony is attacked supplied the only evidence linking [the defendant] to the crime, or where the likely impact on the witness's credibility would have undermined a critical element in the prosecution's case." *United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996). When the issue is late disclosure of *Brady* material, a new trial is required only when the defendant was deprived of a meaningful opportunity to use the material. *Freeman v. Kuhlman*, 96 CV 3749, 1998 WL 661469 (E.D.N.Y. Aug. 3 1998) (citing *People v. Cortijo*, 70 N.Y.2d 868, 870, 523 N.Y.S.2d 464, 464 (1987)).

**B.     Relevant Facts**

On May 1, 2003, Forensic Scientist Kathleen Hum (Scientist Hum) from the Onondaga County Center for Forensic Sciences (Forensic Lab) contacted the prosecutor and requested "elimination samples" to assist in the analysis of the DNA mixtures found in the underwear and bra samples. (Ex. G at Ex. P). On June 3, 2003, Scientist Hum again contacted the prosecutor, who related that she was still obtaining DNA samples. (Ex. G at Ex. Q). On June 30, 2003, and July 9, 2003, the lab was in the process of analyzing two additional DNA samples obtained by the prosecutor. (Ex. G at Ex. R). On July 22, 2003, Scientist Hum shared with the prosecutor the "preliminary results" for the sample comparison, which included the additional DNA samples obtained by the prosecutor. (Ex. G at Ex. S).

Scientist Hum certified a report dated August 4, 2003, and an amended report dated August 5, 2003, outlining the findings made by the Forensic Lab. (Ex. G at Ex. A). The prosecutor mailed defense counsel a copy of the report on the same day, August 5, 2003. (Ex. G at Ex. A). The first day of trial, August 11, 2003, defense counsel indicated that he had received the report, but wanted additional information regarding the testing of the additional samples, such as how they were obtained and why additional people were tested. (Trial T. 6). Over the prosecutor's objection, the court directed the prosecution to provide defense counsel with the "sum and substance" of the DNA testing prior to opening statements. (Trial T. 7–9). The DNA report excluded petitioner as a contributor of DNA to the sample obtained from the underpants. (T. 760). The DNA analysis could neither include nor exclude petitioner

as a contributor to the bra sample. (T. 761).

### C. Application

The Appellate Division found that, even assuming the prosecutor "delayed in providing defendant with *Brady* material," defendant still "received the material in time for its effective use at trial." *People v. Comfort*, 60 A.D. 3d at 1300 (quotation marks omitted). Defense counsel received the information before opening statements, and he was given a meaningful opportunity to use it at trial.

A review of the trial transcript in this case shows that defense counsel effectively cross-examined Forensic Scientist Hum, eliciting that petitioner was excluded as a contributor for the DNA samples that were tested by the Forensic Lab. (T. 761). Defense counsel also cross-examined the two witnesses that were the sources of the additional DNA found in the underpants sample. (See T. 680–89, 692–96). CB's friend testified that she did not know if the underpants were hers, and her boyfriend testified that he had never had sex with CB, and did not know how his semen got in the underpants. *Id.* The boyfriend testified that because he and CB's friend always used a condom when they had sex, he did not know how his semen would be present, even if the underwear belonged to CB's friend. *Id.* The Appellate Division's finding that petitioner was not deprived of a meaningful use of the *Brady* material was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, this court finds that petitioner's claim based on an alleged *Brady* violation should be dismissed.

## VI.   Denial of Continuance

### A.   Applicable Law

Due Process "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted). "Only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." *See Drake v. Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003) (quoting *Morris v. Slappy*, 461 U.S. 1, 12 (1983)). To prevail on a claim that the denial of a continuance was unconstitutional, a petitioner must demonstrate that the denial of the continuance was arbitrary and that it substantially impaired his defense. *Wood v. Artuz*, 39 F. Supp. 2d 211, 214 (E.D.N.Y. 1999) (*citing United States v. Edwards*, 101 F.3d 17, 18 (2d Cir. 1996).

### B.   Relevant Facts

On July 28, 2003, Mr. Harrell was substituted as petitioner's trial counsel. (S. 26). Mr. Harrell received a packet of information from petitioner's previous counsel on July 31, 2003. (*See* P.T. 15). Mr. Harrell also spent over six hours going over petitioner's file with petitioner's previous counsel. (P.T. 26). On August 7, 2003, five days before trial began on August 11, 2003, Mr. Harrell requested a continuance, but was denied. (P.T. 18). On the first day of Voir Dire, petitioner expressed that he had "absolutely no problem with Mr. Harrell at all," but again renewed the request for a continuance, expressing that he did not believe Mr. Harrell had enough time to adequately prepare for trial. (T. 42). Petitioner's request was denied, but the court

12

stated that if Mr. Harrell "wants more time [the court] will consider those applications as we go along."  (T. 42).

### C. Application

The Appellate Division held that petitioner was not denied due process or his right to a fair trial as a result of the trial court's denial of petitioner's numerous requests to adjourn the trial.  *People v. Comfort*, 60 A.D.3d at 1299.  The Appellate Division noted that the trial court "granted [petitioner's] 'demand' for a new attorney approximately two weeks before trial was scheduled to commence, and defense counsel accepted the assignment with knowledge of the time constraints."  *Id.*  Petitioner argues that the requests for a continuance were made "continually" during trial "because counsel [was] unable to properly cross-examine witnesses that the People [were] calling."  (Pet. Mem. of Law 21).  Petitioner has not presented any evidence that the denial of petitioner's requests for a continuance were arbitrary or that the denial of petitioner's requests substantially impaired his defense.  As will be discussed further below, defense counsel presented a vigorous defense on behalf of petitioner, including effective cross-examination of the People's witnesses.  Petitioner's claim that the denial of his requests for a continuance violated his constitutional rights should be dismissed.

## VII. Ineffective Assistance of Trial Counsel

### A. Applicable Law

To demonstrate constitutionally ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's performance fell below an objective standard of

professional reasonableness; and (2) but for counsel's alleged errors, the results of the proceedings would have been different, and as such, petitioner suffered prejudice. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). A reviewing court must determine, not whether the state court's rejection of the ineffective assistance of counsel claim was correct, but whether it was "objectively unreasonable" in applying the *Strickland* standards. *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006) (citing *Williams*, 529 U.S. at 409).

### B.   Application

Petitioner makes three claims in relation to the alleged ineffective assistance of trial counsel: 1) the failure to call an expert DNA witness, 2) the failure to cross-examine witnesses, and 3) cumulative errors. Even though trial counsel's strategy was ultimately unsuccessful, when evaluating the constitutionality of trial representation, "courts should not confuse true ineffectiveness with losing trial tactics or unsuccessful attempts to advance the best possible defense." *Henry v. Poole*, 409 F.3d 48, 58 (2d Cir. 2005). *See also McKee v. United States*, 167 F.3d 103, 106 (2d Cir.1999) (courts should not use hindsight to second-guess sound tactical decisions made by attorneys) (citing *Strickland*, 466 U.S. at 689).

Petitioner argues strenuously that trial counsel's failure to call his own DNA expert constitutes ineffective assistance of counsel. Petitioner cites to the pretrial

14

hearing when the judge encouraged defense counsel to err "on the side of caution" and "line up the DNA expert whether you need that expert or not." (P.T. 6). The judge also indicated that defense counsel may "just prefer to cross-examine [the People's] expert. But that is a trial strategy that is left to your good services." (P.T. 6). Petitioner places great weight on the statements by counsel and the judge that the DNA results were "inconclusive." (*See, e.g.* P.T. 6). Petitioner argues that because he was excluded as a contributor of DNA on the underwear sample, it excludes him as the rapist.

  This argument fails for two reasons. First, the factual account of how the rape occurred–with petitioner ejaculating on CB's stomach and having her clean herself with a tissue–provides a plausible explanation the jury could accept as the reason petitioner's DNA was not found on the victim's underpants. The presence of DNA from two of CB's friends, one male and one female, indicates very little as to petitioner's culpability. CB's friends testified that they were dating and having sex with each other. CB's female friend also testified that she often left her clothing at CB's house, and it was possible that they inadvertently shared underpants. The presence of DNA from CB, her female friend, and her female friend's boyfriend is the main reason the DNA results were described as "inconclusive," as they did not point to a specific person wearing the underwear or contributing DNA. Additionally, the fact that CB showered before going to the hospital to have the rape kit completed, the

15

day after the sexual assault, also explains the failure to find any of petitioner's DNA from the vaginal or anal swabs.

Second, it is unclear what additional helpful testimony a DNA expert could have provided had defense counsel obtained one. Defense counsel, through effective cross-examination, was able to elicit from the People's expert that petitioner was excluded as a contributor of DNA in the underwear sample and all other samples that were suitable for DNA analysis. (*See* T. 760–61). Defense counsel was able to pursue an effective trial strategy without calling his own DNA expert as a witness. The court finds that his representation of petitioner in this regard was not ineffective.

Petitioner argues that defense counsel did not adequately cross-examine the People's witnesses and highlight every inconsistency in each witness's testimony. Petitioner includes a spreadsheet outlining what he alleges are sixty-four inconsistencies in the testimony given at trial. (Pet.'s Ex. C, Dkt. No. 1-1, pp. 79–81). Determining the questions to ask during cross-examination and how to proceed during trial are key parts of an attorney's trial strategy. "Decisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

In his opening statement, defense counsel pleaded with the jury to listen to how

the witnesses' stories would change. (T. 297–99). Throughout the trial, defense counsel vigorously cross-examined witnesses called by the prosecution (T. 363–81, 383–84, 426–37, 453–73, 481–92, 524–40, 541–43, 559–62, 563–65, 628–630, 642–646, 658–660, 675–679, 684–689, 693–697, 746–759, 762–764, 804–816, 858–871, 880–887), emphasizing inconsistencies and highlighting any deficiencies in the evidence linking petitioner to the rape. In his closing, defense counsel repeatedly highlighted conflicts in the testimony (T. 947–52, 56–57), and he pursued a theory that someone other than the petitioner was the rapist (T. 955). This court finds that trial counsel's decisions regarding cross-examination were strategic and within the wide range of acceptable professional assistance under the *Strickland* standard.

Petitioner has failed to establish that counsel's alleged errors, individually or cumulatively, so infected the trial as to render his conviction a violation of due process. As noted, the record documents that defense counsel vigorously and competently defended petitioner during all stages of the proceedings. Petitioner's claims of ineffective assistance of trial counsel were decided on the merits on direct appeal. The Appellate Division held that petitioner received "meaningful representation" overall during trial.[3] *People v. Comfort*, 60 A.D.3d at 1301. The

---

[3] Some judges in the Second Circuit have raised concerns about the differences between the New York standards for evaluating ineffective assistance of counsel and the *Strickland* standard applied by the federal courts. *See, e.g., Henry v. Poole*, 409 F.3d 48, 70–71 (2d Cir. 2005); *Parker v. Ercole*, 582 F. Supp. 2d 273, 292 n.9 (N.D.N.Y. 2008). However, several panels of the Second Circuit have held that, for the purposes of review of a habeas petition under 28 U.S.C. § 2254(d), New York's "meaningful representation" standard is not "contrary to" the *Strickland* standard. *Rosario v. Ercole*, 601 F.3d 118, 124–26 (2d Cir. 2010) (collecting cases and comparing the two standards).

Appellate Division's rejection of petitioner's ineffective assistance of counsel claim was not objectively unreasonable, nor contrary to clearly established Supreme Court precedent. Whether counsel's performance at trial is evaluated as a whole, based on the "meaningful representation" standard, or whether petitioner's specific claims of ineffective assistance are distinctly evaluated, petitioner states no basis for federal habeas relief.

**VIII. Certificate of Appealability**

The court notes that an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254 may only be taken upon the issuance of a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A certificate of appealability may be issued only if the applicant has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because this court has found that the claims raised by petitioner in this case do not make a substantial showing of the denial of a constitutional right, the court will recommend denial of a certificate of appealability.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is further

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: June 9, 2011

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge